Good morning, and I'd like to reserve five minutes, if I might, for rebuttal. My name is Eric George, and I'm here on behalf of the plaintiffs and the appellants. We're honored to have with us the support of the California Lawyers for the Arts, as represented by Ms. Alma Robinson behind us. Your Honors, I'd like to start with one fundamental proposition. In all of the reams of paper that have been filed before the Court, one thing must become clear. The statute has no discrimination against interstate commerce or against anybody outside of California, and very, very most one might say there's a discriminatory effect on Californians themselves. You can violate the Interstate Commerce Clause without discriminating. True? It is true, Your Honor. You can just sort of reach out and try to control whatever goes on in other states. You can do that and violate interstate commerce. Can you not? Yes, under very certain So let's not spend a lot of time on discrimination. But Your Honor, I want to emphasize why I make that point, because that's the fundamental motivating point of the Dormant Commerce Clause. As Chief Justice Roberts stated recently, the most palpable harm imposed by problematic ordinances is likely to fall upon the very people who voted for the laws. Therefore, there's no reason to step in and end local business as a victory. But Your Honor, when we get to the question of extraterritorial effect, that is only problematic in two contexts. It's problematic in the context of price control or price fixing, not here at all, or in situations where there's an actual conflict between statutes. And why do we know that? Your Honor, that's the, I'll call it the foie gras case. It was decided six months ago by this Court. And it makes that very clear. And I'd like to read the language of that, Judge Fernandez, because I think that puts this directly into context. As the Ninth Circuit said in this foie gras case, the Supreme Court explained that Healy and Baldwin involve price control or price affirmation statutes. Accordingly, the Court has held that Healy and Baldwin are not applicable to a statute that does not dictate the price of a product, and does not tie the price of its in-state products to out-of-state prices. So too here. In other words, no control on price, no conflicting legislation, and with no discrimination, this is not a dormant commerce clause problem. Let's say we disagree with you. What's your next argument? If the Court were to find that there might be It's a dormant commerce clause problem. Okay. Then we can't decide this on the basis of the pleadings alone. And as the Court will As the Ninth Circuit said also recently in S.D. Myers, when you're dealing with a facial challenge to an ordinance, that ordinance or statute here cannot under any circumstances be constitutional. Well, it's quite easy, of course, I would submit, to see that the vast, vast, vast majority of situations that are called for by the statute, excuse me, Your Honors, all of them, have the requisite California nexus. Why do I say that? Because the seller of art is either in California or a California resident. There's always that nexus to California. That assumes that being a resident is sufficient for California to control everything that goes on outside of California, correct? It assumes that because the defendants here, Your Honor, have voluntarily undertaken by way of contract a relationship with the California seller to agree to sell those works. So too in the S.D. Myers case. Judge Fernandez, there we had a situation where Well, that's just another way of saying that if I live in California, I can't sell something that's in Massachusetts to somebody in North Dakota without being regulations on how the say. Nothing can go on anybody. No other state may have this interesting rule that any time you sell a work of art, you get mulched in five percent. No other state may have it. But by golly, if there's a California resident, you can enforce that not only against all the people outside the state, but against the California resident. Your Honor, that the artist is outside the state, the buyer is outside the state, the property is outside the state. The only nexus is residency in California. And I believe you're saying that's sufficient to take care of any interstate commerce question as long as the residents of California, you can do anything you want. I think that's what you're saying, although you sort of felt the need to switch to try to call it a tax. But let's forget that for a moment. Well, I think that that's a relevant consideration because what we're dealing with here, Your Honor, is a levy. It's a five percent. Come on. It's only a tax in somebody's dreams. It's very difficult to decide what kind of tax it is where you tell me, I'm going to tax you five percent. And by the way, you have to send a check to Joe Blow over there. That's how we enforce our tax. You send Joe Dose a check for it. And you've got to fine them too, by the way. Right. That's the kind of tax we're levying. That's a really pretty strange tax, isn't it? It doesn't seem to me that it goes for general state purposes, et cetera, et cetera. Well, wouldn't the state of California be able to tax that and then later on to take that money that's generated and give it back to artists? I don't think there's any question about that. And frankly, Your Honor, that's not challenged by the other side. So looking, I'm sorry, Your Honor. Well, I'm saying that under a complete auto, we look beyond formalism. We look beyond the nomenclature of what it is. And rather than call it a tax or call it a regulation, I think what it is is a levy that is imposed on five percent of the gross receipts of a transaction. And, Your Honor, in that respect, this is very much like a tax where there is no question but that a party that's outside of California but with a residency or presence in California can be obligated to withhold those monies. This is a proper legislative exercise by the state of California. It has been for 37 years. And it's not something on a facial challenge without any assessment at all of burdens, Your Honor. You're comparing it to a tax. Is there any legal basis for applying taxation case law to a statute that requires the transfer of money between private parties? Your Honor, there is none that we know of and there's none that opposes that. But what this is is it's a form of legislation that California in its proper exercise of its Federalist powers should really have no problem implementing. Why? Because it has some aspects that are very much like a tax, some that may be somewhat like a regulation. But when we look at it under the jurisprudence of the Ninth Circuit, it's either a tax or it's a regulation. This is something that's absolutely viable. As to why it would be viable as a tax, let us remind ourselves. The defendants here are California. They have a California presence. Going back to the Supreme Court decision in National Geographic, when an out-of-state company has a presence in California, as Sotheby's does here, as Christie's does here, they are subjected to California's law. There is no dormant Commerce Clause problem. Again, I want to get away from the issue of what we call it. It doesn't matter if we call it a tax or a regulation. The specifics of what this law is are all things that are validated by applicable law. If we want to call it a regulation, we have to look at it in the context of the foie gras case that came out recently by the Ninth Circuit. And again, I want to repeat as strongly as I can. Unless for an out-of-state regulation, there's price control or duplicative regulation or statute, there is no dormant Commerce Clause problem. That is not an issue that's reached here. Why did the District Court err below? Because it relied thoroughly on Healy, a price control statute. That price control statute that was at issue in Healy is totally unlike what we're dealing with here because there is no control of price. California's law can be fully implemented without any effect on the price that's ultimately achieved at auction. There's no control over the manner of the sale. It doesn't purport to do anything other than require the seller to, I'm sorry, Your Honor, to take 5 percent of the gross receipts and then pass those along. And as in the United States Supreme Court case in Scripto, if a party follows the law, there is no impact on the party. If the auction houses collect the 5 percent, then there is no obligation of them to pay it themselves. Only when they don't follow the law do they do have that obligation. Isn't there some kind of obligation to seek the artists? Yes, Your Honor. There's absolutely no obligation to me. That, Your Honor, is a tiny administrative task. Now, we didn't get a chance to You're saying it's a tiny administrative task? Absolutely, Your Honor. To seek artists all over the country, no matter what. Your Honor, yes, and let me explain why. That is a levy that is only paid to artists who have their artwork sold at auction for $1,000 or more. This is not an infinite number. It's a very finite number. These are all artists that the auction house will know about. They're not going to sell work, presumably, that they don't have an understanding is valid, not If there's a problem with finding the artist, they can transmit the levy to the Arts Council and the Arts Council will, in turn, find the artist. Let me ask you. I expect you want to address the second issue in striking down the entire CRRA. Yes, certainly, Your Honor. You have only three minutes left, so I'm giving you that shot. I think we understand your argument. Thank you very much, Your Honor. Excuse my lack of professionalism here, but, Your Honor, it was clear error for the District Court to go out of its way and ignore an express severance provision that the legislature put in. In the facts that we know of, there was a question raised by a Deputy Legislative Counsel about a Dormant Commerce Clause issue. The legislature responded by then adding a severance clause. There can be no question, under those circumstances, that the legislature saw to it that if part of the statute was deemed unenforceable, that the legislature still wanted the law to apply to in-California sales. If we do sever it, assuming for the sake of the argument, we hold against you on the Commerce Clause, but we sever it, what do we do with the case, then, in terms of the District Court to do what? Sure. To have the law enforced as to all instances in which there are in-State sales and for which no levy was paid back to the artist. And to decide the copyright issue, I take it? Yes, Your Honor. Assuming we haven't already decided that. Precisely, Your Honor. Our position is that the Morseburg case in 1980 disposed of And to decide the eBay issue, speaking of parts that are auctioned and must be over $1,000, and the eBay, I mean, I believe you said that eBay won't allow auctions to be The point is, beside the eBay issue, too, I take it? Yes, absolutely. That would be appropriate for remand. It's a separate issue in a sense. Precisely. Our issue there is that agency has to be determined as a matter of fact. But it's very important to me, Your Honor, to clarify something that Judge Fernandez just asked. Your Honor, the levy only applies to those artworks that are sold for $1,000 or more. Yes. Okay. But of course, the levy itself can make the sale unprofitable. We know that. Okay. Right? That's right. I mean, it can mean that you actually sell it for less than you paid for it. But that's neither here nor there. Yes, that's right. That might be a different issue. Maybe you're taking this clause issue that's not at hand here. That's another question. I understand. Right. Okay. So that's what I was asking about the eBay issue, though. Yes. Obviously, that sort of invades the idea that it couldn't possibly be something else with a very well-known work of art, a very valuable piece. Well, again, it would have to be a piece of artwork that still was sold for more than $1,000 at eBay. I don't know if you bought any art lately, but let's leave that. Let's leave that. Go ahead. Wasn't it – couldn't we say it was more fair to the people of California that the district court scrapped the whole statute? I mean, otherwise, isn't it – doesn't it have harmful effects if just leaving the provision? Aren't there harmful effects to the state's arts market or economic? I mean, what's your response to that? No, I think that's something the legislature decided. It still wanted to have the effect of promoting the arts and doing so even if it meant a cost for those being in California and selling their art in California of having to transfer that 5% levy. Moreover, I want to quickly add to that, Your Honor, that's not a subject of concern for the Dormant Commerce Clause. It would be a proper subject of concern for the legislature, perhaps, which, of course, would be free to revisit the issue if they thought that that was a problem. But most certainly, with the Express Severance Clause, without any qualifications whatsoever imposed on it, the law is clear that this is, at bare minimum, something that needs to be upheld in its entirety. I'm going to interrupt you. There is something that worried me just a little bit with the district court's opinion. She suggests the legislative history of the CRRA, debated as Assembly Bill 1391, reveals that the legislature abandoned its initial version of the CRRA that purported to regulate only sales that took place in California. Now, that seems to be an underpinning of what she did in striking down the whole statute. Right. The abandonment. And she references a declaration, the Russell Declaration, Exhibit 1. So I read Russell Declaration, Exhibit 1, and it goes me to Assembly Bill 1391. And in that particular bill, it says on the last line of the first page, vote, majority, appropriation, no, fiscal committee, yes, state mandated local program, no. Does that bear into what she wrote in her decision? Because what it were, I mean, I was reading, she says they abandoned it and basically makes her whole ruling on the fact that it was abandoned. And she cites this declaration. And so I went to the declaration, and it's just the bill, except these words, vote, majority, appropriation, no, fiscal committee, yes, state mandated local program, no. That's not abandonment, Your Honor. Well, I appreciate that's what you're going to say. Yeah. Can you explain this to me? It seems to me like what this says is if it's a state mandated local program, the legislature says no. I don't know, Your Honor. Okay. I can't give an intelligent answer to that. I just thought I, I mean, I was just reading every bit of the record. I appreciate it. And I'm giving you a chance to give it a good shot. Thank you, Your Honor. All right. Good morning, Your Honor. Steve Reese for Sotheby's. And just to give the Court a sense of who, we have several people who may argue I represent Sotheby's and I'm going to address the Commerce Clause issues as they've been briefed in this Court to the extent the Court has questions. Mr. Russell, who represents Christie's, will focus primarily on the severance issue that the Court just raised, the severability of the statute. And to the extent he deems it warranted, Mr. Dwyer may take a minute or two to address eBay-specific issues. With respect to the Commerce Clause, it seems- If you're not a clerk, you can start the time. But you can address it the way you want, but you've got 15 minutes. Understood, Judge Smith. I think from the Court's questions, the Court understands the Commerce Clause issue extraordinarily well. I think the Court's questions indicate that the Court understands that this statute directly regulates transactions outside of California. It, therefore, as the District Judge found, clearly violates the Commerce Clause. It clearly violates the mandate in Healy and numerous other cases that a state cannot directly regulate transactions outside its borders in other states. That's what this statute is. How do you respond to counsel's argument that Healy doesn't apply to this because it only applies to certain cases? I think that's clearly wrong. The doctrine applies to any- for two reasons, Your Honor. It applies to any attempt by a state to regulate conduct totally outside its borders. One, because it clearly interferes with the very structure of federalism. Two, it's a limit on state power. California has absolutely no power to regulate behavior outside its borders. There's this very simple hypothetical that illustrates that. California undeniably has a police power interest in the health of its residents. Yet California could not impose a sales tax or a use tax on the purchase or use of cigarettes by a California resident in Nevada. California resident, under the Appellant's theory, is a California resident. California can do it. But California clearly could not impose a sales tax on the purchase of sales in Nevada by a California resident or the use by a California resident, the smoking of those cigarettes in Nevada. California could impose a use tax on the bringing those cigarettes back to California. California has a use tax that would allow them to tax the use of the property in California. But it can't regulate transactions or sales or activity outside of California. So the simple answer is the Healy principle is fundamental, basic, and it applies anytime, anytime. What about our court's decision in Harris? I'm sorry. Our court's decision in Harris. What do you do with that? By Harris, I mean know it by a different name. Association de la Voz, I was trying to avoid that. My recollection of that case, Your Honor, is that it was regulating behavior in California. It wasn't regulating behavior outside of California. And this statute clearly does that. The other basis upon which the appellants try to uphold this statute is they say, well, Sotheby's, Christie's, eBay have a presence in California. That, therefore, allows the imposition of a tax collection burden. But the presence of a business in the state does not allow the state to regulate the activities of that business all over the country. They can regulate that company's, that enterprise's business in the state. Not everywhere. That's fundamental. And that's all that Quill and National Geographic lines of cases allow. The company has an adequate presence in the state. It can be required to collect an otherwise valid tax. Of course, as Judge Fernandez points out, this is not a tax. But even if it were, all Quill and National Geographic allow is the collection of a tax. If the tax is valid here, it's not a tax. But if it were a tax, it would be invalid. And let me bring up a third basic point. Their primary argument, and I will confess that the arguments shift somewhat as we move through the process here. But the primary argument appellants offer to validate this levy is an analogy to a gross receipts tax. The problem with that is that the Supreme Court held in a case that is squarely on point that they never cite or refute, EFCO versus Jones, 409 U.S., Supreme Court said in hack verba, the tax on the gross receipts of a sale of personal tangible property in another state is an impermissible burden on commerce. That is in hack verba what the Supreme Court said. That is their analogy directly, if you refute it by a Supreme Court case, directly on point decided in 1972. And if the Court has no further questions on the Commerce Clause, I'll sit down. She stole my question, so I was going to ask you, what are you going to do with Harris? And I wasn't going to say the other words either. They're impossible to say. She ain't got them bad. Wait for a night at Oyehue to try to pronounce them. Well, thank God we dispensed with it. I like Harris much better, too. I'm up here to address the severability question, and so I want to just briefly respond to an argument that Mr. George made, which was that the record is somehow clear that the legislature added the severability clause in response to a concern about the constitutionality of the statute. There's no evidence of that in the record whatsoever. The legislative history shows that the Legislative Council on August 30, 1976, issued an opinion letter to the committee chairs of the Assembly and the Senate, opining that the out-of-state provision of the statute would be unconstitutional. It doesn't reference the severance clause. At the same time, on the same day, there's a conference committee report that indicates it proposes four changes to harmonize differences between the Assembly Bill that passed and the Senate Bill that passed. One of those changes was to delete the word buyer. One was to add a severability clause. One would think, if this was supposedly in response to a constitutional concern, there would be some reference, at least in the conference committee, saying, bad news, we heard the statute is unconstitutional, but good news, we added severability. It looks much more consistent to say it was simply added as a matter of minor amendment. If you read the literal language of the conference committee report, it says it's a minor amendment. I don't think anyone gave any thought to it. What I can say, though, what the record does show is that when this bill hit the Assembly, the Assembly added the very words that you're being asked to sever. There were eight words, and then you're now being asked to sever six, because the Senate added the language and the buyer or seller resides in California or the sale takes place in California. They refused to adopt the very statute that you're now being asked to sever. And when it went back to conference, the only change the Senate made, it wasn't, no, no, let's take that out. We should all agree California's fine. The only change, I think this is critical, was the Assembly said, let's delete the word buyer. Now, if this was truly intended to be a California-only statute or to protect artists only, why in the world would you delete buyer? Go ahead. There are arguments from both sides on whether or not it was intended to be left in or not left in. If it's ambiguous, don't we leave it in? Well, Your Honor, I would submit it's not ambiguous. That's the unfortunate fact for the appellants here. We've got evidence that I would submit is clear, and they have no evidence. They don't have a single scintilla of evidence to suggest that the legislature intended to pass a California-only statute. We know, we don't have to guess, we know the Senate refused to pass a California-only bill because it added the outside California provision, and we know that the Assembly, when it was faced with that in conference, it didn't respond, no, no, we want California only. Instead, it tweaked it to further protect the California art market by deleting the reference to buyer because it understood if you applied it to buyers, no one would even sell to a Californian. Okay, the real problem that I have is that the district court, and I quoted the language to counsel, writes right in it, the legislature abandoned the bill that would have applied only to a state transaction. And then she cites this affidavit. And I tried to find anything in the affidavit to suggest abandonment, except this is the original bill. Is that what you're suggesting? I mean, the only thing I could find that had anything to do with it was the language I quoted to counsel. Yes, Your Honor, I don't know what she meant by abandonment. I know what we argued to her, and so I'm going to surmise that what she was meaning was the Senate, when it was faced with this bill, refused to enact a California-only provision. And that's what she meant by abandon. It abandoned the California-only concept. And from that point forward, both in the Senate and the Assembly, it was clear that the policy was to protect the California art market. We've cited, they've not refuted, there's no evidence to the contrary, there were criticisms levied by leading art lawyers, there were criticisms levied by the Department of Finance, by the State Board of Equalization, all saying the same thing. This is going to kill the California art market. So there's evidence that it was clearly of concern, and there's really only one way to construe the language that was added by the Senate, that they're asking you to strike. I mean, that's the irony. Literally the language the Senate added, that's what they want you to sever. So when we say there's no evidence... So what do you think the severance clause is for? Well, Your Honor, for example, one of the very early objections was that there was a question about the retroactive application of the Act. And in fact, that's a live issue here. If we do as they say, and we don't reach the copyright issues today, at some point we're going to have to. They say even if the 76 Act goes out, the 1909 Act still applies, and there's going to be a one-year window where the Act was enacted, the Resell Royalty Act was enacted, the 76 Act wasn't alive. That was a concern that the legislature saw. That clearly could be severed. You're not changing any policy other than saying we're going to avoid an ugly legal issue about can it be retroactively applied. Something that states are very concerned about, and it's specifically referenced in the objections by the Department of Finance. We don't want to spend money on legal entanglements on that issue. So that's an easy severability question. So the fact that the legislature passed the statute with an explicit severability clause after it had been put on notice that the out-of-state sales provision might be struck down means nothing? Well, Your Honor, if that were the record, that might be problematic. The fact of the matter is there's no evidence that one was in response to the other. That's the difficulty. We all have to guess because they're both dated August 30th. So there's no evidence whatsoever that the conference committee which proposed the adding of the severability clause knew about the legislative council letter. And certainly one would think you would have referenced it. Now I want to point out, because I think this is a compelling fact, if I'm wrong and if it was so clear that the state intended to have severability, one asks where's the Attorney General who was invited not once but twice? I can understand the reluctance of the Attorney General to defend the constitutionality. But I certainly have a hard time, why aren't they running in here now saying, no, no, we want a California-only statute? And the answer in my estimation is quite clear. They understood that the art market would collapse. No one is going to sell to a Californian in any way, shape, or form if it's clear it only has to occur in California. Why would you do that? You can avoid that royalty every time. So it makes no sense. And they have no answer to that either. Where is the Attorney General? I mean, this seems like a very straightforward issue. You'd think they'd weigh in. I submit the evidence is quite clear. We presented evidence that's clear. A lot of times the Attorney General doesn't weigh in, to be fair. In pure fairness. I was in a Prop 8 case. They didn't weigh in. Well, and unlike the... The Supreme Court told me I shouldn't have listened to the Supreme Court. Well, I understand some people call the rights in this case a moral right, brought to suit sometimes viewed as a moral right. But I think very few people would think it raises the moral issues of the Prop 8 case. So unless the Court has further questions, I'll submit on that. Well, I have one question. Assuming we did not agree with you... Yes. ...in terms of severance. We said, no, it severs. Do you have an idea of what you think goes back? I take it the whole case goes back because of the in-California part of it, at least. Well, Your Honor, if you were to disagree with us on the severability question, I'd like to take a run at you on the copyright preemption question. Because... Take a run? Never mind running at me. He doesn't like running. We could walk together, Your Honor. I'm happy to get the same place. It would at least... At the very least, we'd send the copyright question back to the District Court. True? If Your Honors did not rule on the copyright question, absolutely. If we were not going to rule on it, because we saw a little bit of Ninth Circuit law that looked a little bit strange in that area. If we weren't going to rule on that issue and send it back to the District Court, that would go back, I take it. And so would the eBay question. And so would the eBay question. And I take it, so would your overall case, except with the out-of-state stuff separate. Well, so basically what would happen in this, you're essentially creating a case that would end up collapsing under its own weight. Because you've got out-of-state auction houses that don't have sales in California. So there wouldn't be a case. But, I mean, the problem is... I'll worry about whether it collapses under its own weight some other day. But the answer to Your Honor's question is that the case would go back to the California-only statute. Okay. Thank you. We have a minute 20. Good morning. May it please the Court. John Dwyer on behalf of eBay Incorporated. Just to address Judge Fernandez's question, we would ask the Court, if it were to decide to remand something back to the District Court to address what we've described as the eBay question here, we believe as a matter of law, it's clear that the statute does not apply to eBay. The obligations on the statute are clear. They apply to sellers of art and agents of those sellers. And we believe that... Even though the District Court did not address the question, you'd want us to? That's right, Your Honor. It seems to me to be somewhat similar to the arguments made about the District Court didn't address the tax question, so you shouldn't. Which seemed to be some argument you all were making. I think the difference, Your Honor, was the argument that we were making was that plaintiffs had not raised the tax argument below. But that's very different in this situation. We did raise the statutory application to eBay below. And if the Court doesn't address it, we're going to be back here in two or three years regardless. Because there's a fundamental legal question here as to whether or not the statute applies to eBay. And we think it's quite clear. Nobody at this point is arguing that eBay is a seller of art. That's not what they do. The plaintiffs really abandoned their argument to some extent in their reply brief that eBay even acts as an agent. The reason for that is because California law is clear. First you look at the intent of the parties and specifically how it's represented if there's a contract. The contract here that eBay has between itself and its users specifically says that no agency is granted as a result of the contract. And then California law says you look to the relationship to see if there are indicia of agency. And plaintiffs in the complaint allege no allegations of indicia of agency. And in fact, there are none here. The seller cannot control eBay. As its agent. eBay has no discretion in fulfilling any obligations it has to its seller. The difference is, although we join in all of the arguments of auction houses, eBay is very different than auction houses. We don't take the products. We don't pass on the provenance of a Monet. We don't create a catalog that describes a particular lithograph that we're selling. We don't do any of that. We're much more analogous to the Los Angeles Times classified section. We've read your arguments and I appreciate you making them again today. But you're out of time. Thank you. Thank you very much. Your counsel has used your time. So I'm going to stop now. Thank you, Your Honor. I would like to point out with respect to Mr. Russell's argument on severability there's an awful lot of speculation Oh, do I still have time, Your Honors? Well, you're over. I saw a look and I wanted to make sure I wasn't. Frankly, you got up. I was going to say I'll wait until 30 seconds is done and then he's done. I'll speak quickly. Thank you. There's a lot of speculation including about why the AG is not involved and that is just absolutely wrong. I'm not going to get into things outside the record. But the most important point that I want to make if there's one concept that I can leave the Court with an affirmance of this statute being violative of dormant commerce would expand the law where it has never gone before. There is no dormant commerce clause case that strikes down particularly on a facial challenge a statute that wasn't discriminatory and that didn't involve price fixing. Thank you. Thank you very much. Case 12. Cases 12-56-067 12-56-068 12-56-077 are submitted. Thank you.
judges: Fernandez, Smith, Murguia